## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**NYRON HARRISON, ET AL.**                              **CIVIL ACTION**

**VERSUS**                                              **NO. 20-2916**
                                                        **c/w 21-40**

**JEFFERSON PARISH SCHOOL**                             **SECTION: "G"**
**BOARD, ET AL.**

## ORDER AND REASONS

The above-referenced cases were consolidated for discovery purposes and were before the

Court following discipline imposed on two students by the Jefferson Parish School Board

("JPSB"). In each case, a student at a school within the Jefferson Parish School System was

suspended after being seen holding a BB gun during remote learning. The claims were brought by

the parents of each student against the Jefferson Parish School Board and various teachers and

administrators within the Jefferson Parish School System including Superintendent James Gray

("Gray") and have been resolved. Prior to dismissal of the initial claim, the State of Louisiana (the

"State") was granted leave to intervene in each case[1] and filed a Complaint in Intervention.[2] On

March 23, 2021, JPSB and Gray submitted an answer to the Complaint in Intervention in each

case, in which JPSB brought a counterclaim for declaratory judgment against the parents of the

---

[1] 20-2916, Rec. Doc. 57; 21-40, Rec. Doc. 28.

[2] 20-2916, Rec. Doc. 58; 21-40, Rec. Doc. 29.

two students and Jeff Landry in his official capacity as Attorney General of the State of Louisiana.[3] The counterclaim against the parents has been resolved and dismissed.

The State and the students' parents filed motions to dismiss JPSB's counterclaim.[4] The parents' motion is now moot. The State remains, and urges the Court to dismiss JPSB's counterclaim.[5] JPSB opposes the motion.[6] Considering the motion, the memoranda in support and in opposition, the arguments made at oral argument, the records, and the applicable law,  the Court grants the State's motion.

## I. Background

On October 2, 2020, Nyron Harrison and Thelma Williams (the "Harrison-Williams Family") filed suit against the Jefferson Parish School Board, Dr. James Gray, Cecily White, Terri Joia, and Patricia Adams in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[7] The case was removed to this Court on October 26, 2020.[8] On December 14, 2020, Timothy Brown ("Mr. Brown") filed suit against the Jefferson Parish School Board, Dr. James Gray, Dr. Christine Templet, and Terri Joia in the 24th Judicial District Court for the Parish of

---

[3] 20-2916, Rec. Doc. 63; 21-40, Rec. Doc. 36.

[4] 20-2916, Rec. Doc. 77; 21-40, Rec. Doc. 38. For ease of reference, and because the counterclaims filed in each case are identical, the two counterclaims will be discussed simultaneously. Likewise, because the pending motions are identical, the two motions will be discussed simultaneously. Further, the Harrison-Williams Family and Mr. Brown will collectively be referred to as "Plaintiffs."

[5] 20-2916, Rec. Doc. 77; 21-40, Rec. Doc. 38.

[6] 20-2916, Rec. Doc. 97; 21-40, Rec. Doc. 54.

[7] 20-2916, Rec. Doc. 1-1.

[8] 20-2916, Rec. Doc. 1.

Jefferson, State of Louisiana.[9] On January 11, 2021, the case was removed to this Court.[10]

In March 2021, this Court granted motions to intervene filed by the State in both cases.[11] In the Complaints in Intervention, the State seeks declaratory and injunctive relief against JPSB.[12] Thereafter, JPSB filed a counterclaim against the State and the Harrison-Williams Family,[13] as well as a counterclaim against the State and Mr. Brown.[14] The claims between JPSB and the parents have been resolved.

In the counterclaim brought against the State and former Plaintiffs, JPSB seeks a declaratory judgment that retroactive application of Act 48 is unconstitutional as a deprivation of property without due process under the Fourteenth Amendment and Article I § 2 of the Louisiana Constitution.[15] JPSB claims that although Act 48 specifically states that it is to be applied retroactively, this Court should not permit such retroactivity.[16] JPSB claims that it has a "vested property right in the public funds allocated to it which are needed to operate all public schools in Jefferson Parish, pay the salaries and wages of teachers, staff members, administrators, and other individuals, and provide for the safety and well-being of all students within the Jefferson Parish Public School System."[17] JPSB alleges that the retroactive amendments to Act 48 "now pose[s] an

---

[9] 21-40, Rec. Doc. 1-2.

[10] 21-40, Rec. Doc. 1.

[11] 20-2916, Rec. Doc. 57; 21-40, Rec. Doc. 28.

[12] 20-2916, Rec. Doc. 58; 21-40, Rec. Doc. 29.

[13] 20-2916, Rec. Doc. 63.

[14] 21-40, Rec. Doc. 36.

[15] 20-2916, Rec. Doc. 63 at 10–18; 21- 40, Rec. Doc. 36 at 15.

[16] 20-2916, Rec. Doc. 63 at 17; 21- 40, Rec. Doc. 36 at 16.

[17] 20-2916, Rec. Doc. 63 at 17; 21- 40, Rec. Doc. 36 at 16.

immediate threat to the vested property rights of JPSB over the funds."[18] Therefore, JPSB urges this Court to disregard legislative intent regarding Act 48's retroactive application and hold that it only applies prospectively.[19]

On April 13, 2021, the State (and former Plaintiffs) filed the two instant motions to dismiss JPSB's counterclaims.[20] On May 11, 2021, Defendants filed opposition briefs to the motions.[21] On May 18, 2021, with leave of Court, the State (and former Plaintiffs) filed reply briefs to the instant motions to dismiss.[22] On May 26, 2021, the Court held oral argument.

## II. Parties' Arguments

### A.    The State's Arguments in Support of the Motion

The State first alleges that JPSB has "no rights under the Fourteenth Amendment of the U.S. Constitution or Article I of the Louisiana Constitution, and it cannot sue the State of Louisiana."[23] The State contends that JPSB is not a "person" and therefore, is not protected under the Fourteenth Amendment.[24] The State argues that the Louisiana Constitution leads to the same result, as its due process guarantees mirror those of the Fourteenth Amendment.[25] The State further alleges that JPSB, as a political subdivision of the State, "cannot sue the state of which they are

---

[18] 20-2916, Rec. Doc. 63 at 17; 21- 40, Rec. Doc. 36 at 17.

[19] 20-2916, Rec. Doc. 63 at 18; 21- 40, Rec. Doc. 36 at 18.

[20] 20-2916, Rec. Doc. 77; 21- 40, Rec. Doc. 38.

[21] 20-2916, Rec. Doc. 97; 21-40, Rec. Doc. 54.

[22] 20-2916, Rec. Doc. 107; 21-40, rec. Doc. 64.

[23] 20-2916, Rec. Doc. 77-1 at 4; 21-40, Rec. Doc. 38-1 at 4.

[24] 20-2916, Rec. Doc. 77-1 at 5; 21-40, Rec. Doc. 38-1 at 5.

[25] 20-2916, Rec. Doc. 77-1 at 7; 21-40, Rec. Doc. 38-1 at 7.

part" but instead acts *for* the State.[26] Thus, the State alleges that the counterclaim brought by JPSB is so patently insubstantial so as to warrant dismissal.[27] The State claims that the Louisiana Supreme Court has likewise held that school boards are subject to laws passed by, and modified by, the State.[28]

The State further argues that the counterclaim asserted by JPSB cannot be brought against Plaintiffs as private citizens.[29] The State contends that the Fourteenth Amendment and due process under Article I Section 2 of the Louisiana Constitution protect individuals only from state action, not actions taken by private individuals.[30] Therefore, the State argues that JPSB's counterclaim against Plaintiffs is improper and must be dismissed.[31] As noted above, these claims have been resolved and are no longer before the Court.

**B.    *JPSB's Arguments in Opposition to the Motion***

In opposition, JPSB highlights the fact that the counterclaim seeks a declaratory judgment.[32] JPSB points to the Declaratory Judgment Act, and contends that this Court can render a declaratory judgment if three steps are met: (i) there is an actual case or controversy between the parties, (ii) the Court has authority to grant declaratory relief, and (iii) the Court chooses to use its discretion not to dismiss a declaratory judgment action.[33]

---

[26] 20-2916,  Rec. Doc. 77-1 at 5–6; 21-40, Rec. Doc. 38-1 at 5–6.

[27] 20-2916, Rec. Doc. 77-1 at 6; 21-40, Rec. Doc. 38-1 at 6.

[28] 20-2916, Rec. Doc. 77-1 at 7; 21-40, Rec. Doc. 38-1 at 7.

[29] 20-2916, Rec. Doc. 77-1 at 8; 21-40, Rec. Doc. 38-1 at 8.

[30] 20-2916, Rec. Doc. 77-1 at 8; 21-40, Rec. Doc. 38-1 at 8.

[31] 20-2916, Rec. Doc. 77-1 at 8–9; 21-40, Rec. Doc. 38-1 at 8–9.

[32] 20-2916, Rec. Doc. 97; 21-40, Rec. Doc. 54.

[33] 20-2916, Rec. Doc. 97 at 5; 21-40, Rec. Doc. 54 at 5.

Under this standard, JPSB claims that it has adequately stated a claim for declaratory relief against the State and Plaintiffs.[34] First, JPSB alleges that there is a justiciable case or controversy under Article III.[35] JPSB claims that it has alleged an injury in fact "because the claims [by Plaintiffs and the State] present a palpable threat to the School Board and thus constitute a live controversy, not a hypothetical dispute."[36] Second, JPSB claims that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' constitutional claims, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims.[37] Third, and finally, JPSB argues that this Court should use its discretion to hear, and not dismiss, the instant counterclaim.[38] JPSB applies the factors laid out in *St. Paul Ins. Co. v. Trejo*[39] and claims they support maintaining the declaratory judgment in this instance.[40]

JPSB counters the State's arguments that JPSB lacks standing to bring a declaratory judgment action against the State.[41] JPSB claims the instant case is distinguishable from those cited by the State because the instant suit involves a declaratory judgment action.[42] Further, JPSB alleges that "the State's argument that the School Board cannot seek a declaratory judgment against the State in a suit to which the State is already a party is squarely at odds with the purpose

---

[34] 20-2916, Rec. Doc. 97 at 8; 21-40, Rec. Doc. 54 at 8.

[35] 20-2916, Rec. Doc. 97 at 8; 21-40, Rec. Doc. 54 at 8.

[36] 20-2916, Rec. Doc. 97 at 8; 21-40, Rec. Doc. 54 at 8.

[37] 20-2916, Rec. Doc. 97 at 9; 21-40, Rec. Doc. 54 at 9.

[38] 20-2916, Rec. Doc. 97 at 9; 21-40, Rec. Doc. 54 at 9.

[39] 39 F.3d 585, 590–91 (5th Cir. 1994).

[40] 20-2916, Rec. Doc. 97 at 9–10; 21-40, Rec. Doc. 54 at 9–10.

[41] 20-2916, Rec. Doc. 97 at 11; 21-40, Rec. Doc. 54 at 11.

[42] 20-2916, Rec. Doc. 97 at 11; 21-40, Rec. Doc. 54 at 11.

of the Declaratory Judgment Act to allow this Court to declare the rights and other legal relations of any interested party seeking such declaration, ***whether or not further relief is or could be sought***."[43]

Finally, JPSB argues that its claims against Plaintiffs for declaratory relief are actionable, despite the fact that Plaintiffs are private citizens.[44] Specifically, JPSB alleges that "[t]here is no support for the argument that Plaintiff is an improper party to the Counterclaim given that the School Board seeks a declaratory judgment—as opposed to damages, an injunction or other affirmative relief—that the law Plaintiff has placed at issue and upon which he seeks damages is unconstitutional."[45] Again, these claims have been resolved.

## C.     *The State's Arguments in Further Support of the Motion*

In reply, the State contends that JPSB's arguments concerning the Declaratory Judgment Act are irrelevant because "[t]o seek a declaratory judgment, JPSB must still demonstrate standing."[46] The State contends that JPSB lacks standing to sue both the State and Plaintiffs.[47] The State further claims that the fact that JPSB seeks declaratory relief does not change the instant analysis because "the type of relief sought is irrelevant to whether a political subdivision has an underlying right."[48]

---

[43] 20-2916, Rec. Doc. 97 at 11–12 (internal citations omitted); 21-40, Rec. Doc. 54 at 11–12 (internal citations omitted).

[44] 20-2916, Rec. Doc. 97 at 15; 21-40, Rec. Doc. 54 at 15.

[45] 20-2916, Rec. Doc. 97 at 15; 21-40, Rec. Doc. 54 at 15.[46] 20-2916, Rec. Doc. 107 at 1; 21-40, Rec. Doc. 64 at 1.

[46] 20-2916, Rec. Doc. 107 at 1; 21-40, Rec. Doc. 64 at 1.

[47] 20-2916, Rec. Doc. 107 at 2–3; 21-40, Rec. Doc. 64 at 2–3.

[48] 20-2916, Rec. Doc. 107 at 4; 21-40, Rec. Doc. 64 at 4.

## III. Legal Standards

### A.      Legal Standard on a Motion to Dismiss Pursuant to Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by the Constitution and statute."[49] Thus, under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[50] In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on: (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[51] The plaintiff, as the party asserting jurisdiction, has the burden of proving subject matter jurisdiction by a preponderance of the evidence.[52]

Under Article III of the United States Constitution, federal courts only have jurisdiction over "cases" or "controversies."[53] One requirement for a "case" or "controversy" is that the plaintiff must have standing to sue.[54] "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit[.]"[55] The plaintiff must show that he has a "personal stake" in the

---

[49] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[50] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1000 (5th Cir. 1998) (internal citation omitted).

[51] *Den Norske Stats Ojeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). *See also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[52] *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (internal citations omitted).

[53] U.S. Const. art. III, § 2, cl. 1; *see Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Hollis v. Lynch*, 827 F.3d 436, 441 (5th Cir. 2016).

[54] *Hollis*, 827 F.3d at 441.

[55] *Raines*, 521 U.S. at 818.

dispute, and that the injury alleged in the complaint is particularized as to him.[56] To sufficiently allege a case or controversy, the "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"[57]

**B.     *Legal Standard on a Motion to Dismiss Pursuant to Rule 12(b)(6)***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[58] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[59] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[60]

The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[61] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[62] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me

---

[56] *Id.* at 819; *see also Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 543–544 (1986) (holding that a member of the school board who "has no personal stake in the outcome of the litigation" had no standing).

[57] *Damian v. Park*, 137 F. App'x 619, 620 (5th Cir. 2005) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02 (1983)).

[58] Fed. R. Civ. P. 12(b)(6).

[59] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[60] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

[61] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[62] *Iqbal*, 556 U.S. at 678.

accusation."[63]

Although a court must accept all "well-pleaded facts" as true, a court need not accept legal conclusions as true.[64] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[65] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[66] If the factual allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable" bar to relief exists, the claim must be dismissed."[67]

A court considering a motion to dismiss "must limit itself to the contents of the pleadings, including attachments thereto."[68] Attachments to a motion to dismiss are, however, "considered part of the pleadings" if "they are referred to in the plaintiff's complaint and are central to her claim."[69] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[70]

## IV. Analysis

JPSB asserts a counterclaim against the State and former Plaintiffs, seeking a declaratory judgment that retroactive application of Act 48 is unconstitutional as a deprivation of property

---

[63] *Id.*

[64] *Id.* at 677–78.

[65] *Id.* at 679.

[66] *Id.* at 678.

[67] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[68] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[69] *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) (internal quotation marks omitted).

[70] *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013) (quoting *Collins*, 224 F.3d at 498–99).

without due process under the Fourteenth Amendment and Article I § 2 of the Louisiana Constitution.[71] In the instant motion, the State seeks dismissal of JPSB's counterclaim for two main reasons: (i) JPSB, as a political subdivision of the State, has no rights under the Fourteenth Amendment or Article I § 2 of the Louisiana Constitution and cannot sue the State of which it is a part, and (ii) JPSB's counterclaim cannot be brought against Plaintiffs as private citizens.

In response, JPSB contends that because it seeks a declaratory judgment and meets the requirements of the Declaratory Judgment Act, it has the right to sue the State.[72] JPSB further claims that directing its counterclaim at Plaintiffs is proper because the counterclaim seeks a declaratory judgment "that the law Plaintiffs have placed at issue and upon which they seek damages is unconstitutional."[73]

### A.    Whether JPSB Has Standing to Sue the State

The State argues that JPSB, as a political subdivision and not a "person," has no rights under the Fourteenth Amendment or Article I § 2 of the Louisiana Constitution.[74] The State further argues that JPSB, as a political subdivision of the State, cannot sue the State and therefore, JPSB's counterclaim is so "patently insubstantial" as to warrant dismissal.[75]

The Louisiana Constitution defines a political subdivision as "a parish, municipality, and any other unit of local government, including a **school board** and a special district, authorized by

---

[71] 20-2916, Rec. Doc. 63; 21-40, Rec. Doc. 36. Given that "[t]he Louisiana Constitution provides the same due process protections as that of the United States Constitution," *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016), the two provisions are analyzed as one.

[72] 20-2916, Rec. Doc. 97 at 8–14; 21-40 Rec. Doc. 54 at 8–14.

[73] 20-2916, Rec. Doc. 97 at 15; 21-40 Rec. Doc. 54 at 15.

[74] 20-2916, Rec. Doc. 77-1 at 4–5; 21-40, Rec. Doc. 38-1 at 4–5.

[75] 20-2916, Rec. Doc. 77-1 at 5–7; 21-40, Rec. Doc. 38-1 at 5–7

law to perform governmental functions."[76] Clearly, then, JPSB is a political subdivision of the State of Louisiana.[77] JPSB does not dispute this, as it refers to itself in the counterclaim as "JPSB, in its capacity as a political subdivision of the State of Louisiana . . . ."[78]

Generally, a political subdivision cannot sue the state that created it. The Supreme Court has specifically held that "a political subdivision, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator."[79] The Fifth Circuit has likewise stated that "public entities which are political subdivisions of states do not possess constitutional rights"[80] and noted that there exists a "substantive principle that the Constitution does not interfere with a state's internal political organization."[81]

The Supreme Court has described political subdivisions as "subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions."[82] "State political subdivisions are 'merely . . . department [s] of the State, and the State may withhold, grant or withdraw powers and privileges as it sees fit.'"[83] Likewise, the Fifth Circuit has affirmed that a political subdivision "lack[s] standing to challenge state legislation."[84]

---

[76] La. Const. Ann. art. VI, § 44 (emphasis added).

[77] *See, e.g.*, *Franklin v. City of Alexandria*, 2018-634 (La. App. 3 Cir. 5/1/19), 272 So. 3d 120, 127.

[78] 20-2916, Rec. Doc. 63 at 10; 21-40, Rec. Doc. 36 at 10.

[79] *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009) (internal quotation marks omitted).

[80] *Appling Cty. v. Mun. Elec. Auth. of Georgia*, 621 F.2d 1301, 1307 (5th Cir. 1980).

[81] *Rogers v. Brockette*, 588 F.2d 1057, 1070 (5th Cir. 1979).

[82] *Ysursa*, 555 U.S. at 362 (quoting *Reynolds v. Sims*, 377 U.S. 533, 575 (1964)) (internal quotation marks omitted).

[83] *Id.*

[84] *Appling Cty*, 621 F.2d at 1308.

There are two exceptions to this general rule. First, a subdivision can sue a state when challenging state action under the Supremacy Clause. In *Rogers v. Brockette*, cited by JPSB, the Fifth Circuit held that a school board had standing to sue the State of Texas under the Supremacy Clause, challenging a state statute requiring school districts to provide subsidized breakfast for students.[85] In making this determination, the court reviewed caselaw dealing with whether or not a municipality had standing to sue the state that created it.[86] The court cited extensive caselaw in which federal courts had held that a municipality could not bring a suit against a state in the context of the Contract Clause, the Just Compensation Clause, the Due Process Clause, the Equal Protection clause, and the Fourteenth Amendment.[87] After providing this background, the Fifth Circuit disavowed the general proposition "that a municipality never has standing to sue the state of which it is a creature" but instead held that the past caselaw was "substantive interpretations of the constitutional provisions involved."[88] Applying this analysis to the Supremacy Clause, the court held that the school board could sue the State of Texas.[89]

While *Rogers* did affirm the ability of the school board to sue the State of Texas, its holding focuses narrowly on standing to sue under the Supremacy Clause. The court noted that past caselaw on the issue of whether a subdivision could sue a state under other constitutional provisions, in which courts answered in the negative, was not relevant in the context of the Supremacy Clause

---

[85] 588 F.2d at 1068.

[86] *Id.* at 1067–68.

[87] *Id.* at 1068.

[88] *Id.* (emphasis added).

[89] *Id.* at 1070–71.

specifically because "there is every reason to think that Congress may interfere with a state's internal political organization in ways that the Constitution itself does not interfere."[90]

Even while holding that a subdivision could sue a state under the Supremacy Clause, the Fifth Circuit in *Rogers* expressly affirmed that other courts had already decided the issue of whether subdivisions could bring suit against a state for other constitutional violations, including the Due Process Clause and the Fourteenth Amendment, and determined that the answer was no.[91] According to the *Rogers* court, past caselaw confirmed that "the Constitution does not interfere in the internal political organization of states" including in cases involving the Due Process Clause and the Fourteenth Amendment.[92] Therefore, while *Rogers* may provide support for an argument that school boards have standing to sue within the context of the Supremacy Clause, it expressly rejects JPSB's argument that a school board can bring a claim against a state under the Due Process Clause or the Fourteenth Amendment, as JPSB attempts to do here.

Other courts analyzing *Rogers* have found that "*Rogers* requires an analysis of the constitutional provisions involved in the case. If a provision is written to protect individual rights, as opposed to collective or structural rights, it does not apply to the political subdivision and,

---

[90] *Id.* at 1070.

[91] *Id.* at 1068. At oral argument, JPSB referred to *City of New Orleans v. State*, 443 So. 2d 562 (La. 1983) as an example of a city suing the state for an unconstitutional taking of the city's property under Article I, § 4 of the Louisiana Constitution. In the counterclaim, JPSB did not ask for relief pursuant to Article I, § 4, nor argue that the State was committing an unconstitutional taking without just compensation. JPSB's brief seeks relief solely for an alleged unconstitutional deprivation of property without due process under the Fourteenth Amendment and Article I, § 2 of the Louisiana Constitution. Even if JPSB did seek to bring a taking claims, following *City of New Orleans*, the Supreme Court of Louisiana has held that Article I, § 4 does not protect political subdivisions against takings by the State, as "between the state and its agency, property is placed under the control of the agency for supervision and administration, the [property] to all practical intents and purposes being still the property of the state." *Bd. of Comm'rs of Orleans Levee Dist. v. Dep't of Nat. Res.*, 496 So. 2d 281, 288 (La. 1986). Moreover, the Fifth Circuit held in *Bd. of Levee Comm'rs of the Orleans Levee Bd. v. Huls*, 852 F.2d 140, 142 (5th Cir. 1988) that an agency of the state "cannot sue the state for an uncompensated taking of property." (citing *City of Trenton v. State of New Jersey*, 262 U.S. 182 (1923)).

[92] 588 F.2d at 1070.

14

therefore, the subdivision may not bring the claim against its own state."[93] "However, where a suit by a political subdivision against its state creator is based on a constitutional provision that protects structural rights—such as the Supremacy Clause—the political subdivision may sue its state."[94] Applying this analysis, other courts in this district have held that political subdivisions have no right to sue a state under the Fourteenth Amendment as such provision is meant to protect individual rights, not structural rights.[95] Therefore, applying *Rogers*, JPSB's counterclaim under the Due Process Clause and the Fourteenth Amendment fails.

Second, the Supreme Court has allowed suits by a political subdivision against a state under a "'dilemma' theory of standing."[96] In *Board of Education of Central School District No. 1 v. Allen*, the State of New York passed a law requiring local school boards to provide free textbooks to public and private school students.[97] The Board of Education of Central School District No. 1 brought suit against the Commissioner of Education of New York, alleging that the law violated the Establishment and Free Exercise Clauses of the First and Fourteenth Amendments.[98] While standing was not disputed, the Supreme Court nevertheless noted that the school board had standing to bring the suit because board members had taken an oath to support the United States

---

[93] *City of Alpine v. Abbot*, 730 F. Supp. 2d 630, 632 (W.D. Tex. 2010) (citing *Branson School Dist. RE-82 v. Romer*, 161 F.2d 1301 (5th Cir. 1980)) (internal quotation marks omitted); *see also Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 908 F. Supp. 2d 597, 612 (M.D. Pa. 2012).

[94] *Id.* (citing *Rogers*, 588 F.2d at 1069; *Donelon v. Louisiana Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 567–68, n. 6 (5th Cir. 2008)).

[95] *Id.*; *Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049, 1052 n. 1 (5th Cir. 1984); *Houston Indep. Sch. Dist. v. Texas Educ. Agency*, No. 1:19-CV-684-LY, 2019 WL 6894474, at *5 (W.D. Tex. Dec. 18, 2019).

[96] *See Bd. of Educ. of Mt. Sinai Union Free Sch. Dist. v. New York State Tchrs. Ret. Sys.*, 60 F.3d 106, 112 (2d Cir. 1995). This issue was not briefed by JPSB. It was raised for the first time at oral argument.

[97] 392 U.S. 236, 238 (1968).

[98] *Id.* at 240.

Constitution and "[b]elieving [the statute] to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step–refusal to comply with [the statute]–that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts."[99] At oral argument, JPSB asserted that *Allen* supports a finding that it has standing to bring the instant counterclaim, but this case is easily distinguishable.[100] Unlike the school board in *Allen* that faced the potential of affirmatively violating the First Amendment if they followed the New York law, thereby leaving the school board in a constitutional dilemma, JPSB is not faced with the possibility of violating the Constitution by following Act 48.

JPSB's final argument is that the counterclaim at issue is different than other cases that found a lack of standing for a political subdivision suing a state because the claims here involve a declaratory judgment and dismissal based on standing would be "squarely at odds with the purpose of the Declaratory Judgment Act to allow this Court to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[101] JPSB fails to provide any caselaw showing that declaratory judgments are treated differently from other types of relief in the context of suits brought by a political subdivision against the State. That JPSB seeks a declaratory judgment as its requested relief does not change the fact that JPSB must first show standing, which it cannot do with regards to its claims against the State.[102]

---

[99] *Id.* at n.1. *See also City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 186 (5th Cir. 2018).

[100] JPSB also asserted at oral argument that *Washington v. Seattle Sch. Dist. No. 1* supports a finding of standing in the instant case. 458 U.S. 457 (1982). However, *Washington* does not discuss the issue of standing. Moreover, thereafter in 2009, the Supreme Court held in *Ysursa v. Pocatello Educ. Ass'n* that "a political subdivision, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." 555 U.S. at 363 (internal quotation marks omitted).

[101] 20-2916, Rec. Doc. 97 at 11–12 (internal citations omitted); 21-40, Rec. Doc. 54 at 11–12.

[102] *See, e.g.*, *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (The actual controversy required under 28

Contrary to JPSB's position, courts have considered cases involving political subdivisions seeking declaratory judgment against a state and have held that in such cases there exists the same bar to suit as in cases involving other forms of relief.[103] In *Appling City v. Municipal Electric Authority of Georgia*, a county in Georgia brought suit against Georgia Power, requesting a declaratory judgment pursuant to the Equal Protection Clause, Due Process Clause, and Contract Clause that Georgia Power owed taxes on a nuclear plant.[104] Defendant Georgia Power moved to dismiss the suit on the grounds that the court lacked subject matter jurisdiction over the suit.[105] The district court granted the motion, and the Fifth Circuit affirmed "on the basis of the order of the district court" without including any additional reasoning.[106]

In the district court opinion, the court noted that "[o]f course, the fact that the plaintiffs seek declaratory relief under 28 U.S.C. § 2201, does not absolve them of the necessity of bringing themselves within a jurisdictional statute."[107] The court then went on to dismiss the plaintiff county's claims, finding that "the County's claims should also be dismissed because the County has no standing to invoke the federal Constitutional guarantees of due process and equal protection

---

U.S.C. § 2201(a) is identical to the meaning of case or controversy for the purposes of Article III.") (internal quotation marks omitted); *Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563, 570 (N.D. Tex. 1997) ("The Declaratory Judgment Act does not of itself grant federal jurisdiction.").

[103] *See, e.g.*, *Appling Cty.*, 621 F.2d at 1303; *Vill. of Arlington Heights v. Reg'l Transp. Auth.*, 653 F.2d 1149, 1150 (7th Cir. 1981); *City of Alpine*, 730 F. Supp. 2d at 631; *Bd. of Educ. of Twp. High Sch. Dist. No. 205 v. Illinois State Bd. of Educ.*, No. 85 C 8349, 1989 WL 106610, at *6 (N.D. Ill. Sept. 11, 1989).

[104] *Appling Cty.*, 621 F.2d at 1303.

[105] *Id.*

[106] *Id.*

[107] *Id.*

against an enactment of the State of Georgia."[108] The court further rejected the county's arguments that it was a "person within the meaning of the Fourteenth Amendment."[109]

Based on the foregoing, JPSB lacks standing to sue the State and JPSB's counterclaim against the State must be dismissed.

**B.    *Whether JPSB Can Sue Plaintiffs***

The State further argues that JPSB cannot bring a Fourteenth Amendment challenge against Plaintiffs as private citizens.[110] JPSB brings a counterclaim against Plaintiffs, arguing that Louisiana Revised Statute § 17:416 violates JPSB's due process rights under the Fourteenth Amendment. Considering JPSB and Plaintiffs have resolved their dispute, this issue is now moot.

## V. Conclusion

For the foregoing reasons, JPSB has not met its burden of proving that it has standing to bring the counterclaim against the State. Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss filed by the State[111] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this __2nd__ day of August, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[108] *Id.* at 1307.

[109] *Id.* at 1308.

[110] 20-2916, Rec. Doc. 77-1 at 8, Rec. Doc. 21-40, Rec. Doc. 38-1 at 8.

[111] 20-2916, Rec. Doc. 77; 21-40, Rec. Doc. 38.